Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
spencer@spencersheehan.com

United States District Court
Southern District of New York                                    7:20-cv-08470

| | |
|---|---|
| Christopher Wargo, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>        - against -<br><br>The Hillshire Brands Company,<br><br>                     Defendant | Class Action Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge: The Hillshire Brands Company

1.      The Hillshire Brands Company ("defendant") manufactures, distributes, markets, labels and sells turkey sausage, egg white and cheese breakfast sandwiches within a purported "whole grain" English muffin under their Jimmy Dean brand ("Product").

2.      The Product is available to consumers from retail and online stores of third-parties and are sold in boxes of four.

3.      The relevant front label representations include "English Muffin," "Made With Whole Grain*," "18g Protein Per Serving – Excellent Source of Protein," a picture of the Product and "Turkey Sausage, Egg White & Cheese Sandwich."



4.      Consumers increasingly prefer whole grain foods because they are aware of the healthfulness of whole grains relative to non-whole grains.

5.      Whole grains are nutritionally superior to non-whole grains because they include the entire grain seed – its endosperm, bran, and germ.[1]

6.      The bran and germ of a grain seed contain important nutrients like dietary fiber, and

_____

[1] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *supra* note 1, at Ch. 1 (click "A Closer Look Inside Healthy Eating Patterns").

vitamins, minerals and antioxidants such as iron, zinc, folate, magnesium, thiamin, niacin, selenium, riboflavin, manganese, copper, vitamin A, and vitamin B6.

7.     "Non-whole grains" or "refined grains" have been processed to remove their bran and germ, thereby removing the dietary fiber and most other nutrients.

8.     Most refined grains are enriched, a process that adds back some of the previously removed iron and B vitamins (thiamin, riboflavin, niacin, and folic acid).

9.     Because of this process, the term "enriched" is often used to describe these refined grains.[2]

10.    Because enriched flour only contains the endosperm, it is white in color because it mainly consists of starch ("white flour").

11.    Other nutrients, including vitamin E, vitamin B6, vitamin K, magnesium, manganese, potassium, phosphorus, copper, calcium, and selenium, are not added back in.[3]

12.    Significantly, the fiber removed is not replaced.

13.    The 2015 Dietary Guidelines for Americans recommends that at least half of the grains in a healthy diet should be whole grains.[4]

14.    The Scientific Report of the 2015 Dietary Guidelines Advisory Committee found "strong and consistent evidence" demonstrating that higher consumption of whole grains and lower intakes of refined grains is associated with decreased risk of cardiovascular disease.[5]

15.    The Dietary Guidelines recommend that Americans dramatically increase their

---

[2] AM. HEART ASS'N, *Whole Grains and Fiber*, HEART.ORG (2016), http://goo.gl/3g1XVF.
[3] THE WHOLE GRAINS COUNCIL, NUTRIENTS IN WHEAT FLOUR: WHOLE, REFINED AND ENRICHED (2010), http://goo.gl/rbl80Z (last viewed May 18, 2016).
[4] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., Dietary Guidelines for Americans 2015–2020 (8th ed. 2015), available at http://goo.gl/qnyfLi (click "A Closer Look Inside Healthy Eating Patterns" under "Chapter 1. Key Elements of Healthy Eating Patterns").
[5] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *Scientific Report of the 2015 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Health and Human Services and the Secretary of Agriculture*, at Part D, Chapter 2, pp. 8–9 (Feb. 2015), *available at* http://goo.gl/YjXWlr.

intake of whole grains, and that at least 50% of grains consumed be whole grains.[6]

16.    Americans have been heeding this advice.

17.    A 2015 survey found that 64% of Americans have increased their whole grain consumption in the past five years, and this trend has continued.[7]

18.    As of 2015, 31% of Americans reported that they "nearly always" choose whole grains over non-whole grains, compared to only 4% five years prior.

19.    Since consumers are seeking more whole grain products, there are more labels which misrepresent the amount of whole grain they contain.

20.    The Federal Trade Commission ("FTC") and FDA have stated that consumers are likely to perceive whole grain claims to mean that a product is predominantly whole grain.

21.    This consumer misperception was recently confirmed by an independent study of consumer perception of wholegrain claims.[8]

22.    Respondents showed substantial difficulty in estimating whole grain content of products found in the marketplace and overestimated the amount of whole grains relative to refined, enriched grains.

23.    At least 40% of the time, a whole grain claim resulted in the respondents believing that the products were entirely or at least half whole grain.

24.    Though the Product's front label prominently states "MADE WITH WHOLE GRAIN," it is misleading because the primary ingredient in the sandwich portion of the Product

---

[6] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *supra* note 1, at Ch. 1 & 2 (click "A Closer Look at Current Intakes and Recommended Shifts"); *see also* U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *supra* note 7, at Part D, Chapter 2, pp. 8–9.
[7] Eric Schroeder, *Survey Shows Spike in Whole Grains Consumption*, FOOD BUS. NEWS, Aug. 31, 2015, *available at* http://goo.gl/BRupWU; Elizabeth Crawford, *7 Trends Influencing the Evolution of Health, Wellness and Consumers' Views of Food*, FOODNAVIGATOR-USA.COM (Jan. 15, 2016, 10:36 AM), http://goo.gl/aCqb7e (identifying "the emerging focus on ancient grains" as one of seven consumer food trends to grow in 2016).
[8] Jennifer L Pomeranz et al., "Consumer confusion about wholegrain content and healthfulness in product labels: a discrete choice experiment and comprehension assessment," Public Health Nutrition (2020): 1-8.

is "ENRICHED WHEAT FLOUR," shown in the very fine print of the ingredient list on the side panel.



**INGREDIENTS: MUFFIN:** ==ENRICHED WHEAT FLOUR== (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, ==WHOLE GRAIN WHEAT FLOUR==, YEAST, WHEAT GLUTEN, CONTAINS LESS THAN 2% OF: DEGERMED YELLOW CORN FLOUR, DEGERMED YELLOW CORNMEAL, SODIUM BICARBONATE, FUMARIC ACID, CORN STARCH, SODIUM ACID PYROPHOSPHATE, MONOCALCIUM PHOSPHATE, CALCIUM SULFATE, SALT, AMMONIUM CHLORIDE, HONEY, CALCIUM PROPIONATE AND POTASSIUM SORBATE (PRESERVATIVES), SOYBEAN OIL, HIGH FRUCTOSE CORN SYRUP, VINEGAR.

25.     The amount of "WHOLE GRAIN WHEAT FLOUR" in the Product is slightly above two percent of the total weight of ingredients used in the English muffin portion of the Product.

26.     The Product contains only two grams of dietary fiber per serving, consistent with a food with a *de minimis* amount of whole grain.

27.     Since the Product contains meat and eggs and makes a whole grain claim, its label is purportedly subject to approval by the USDA.

28.     The USDA reviews some whole grain claims and requires that such claims meet minimum whole grain requirements and be truthful and not misleading.[9]

---

[9] The label sketch approval process only requires approval for the initial label. Revisions or subsequent variations to an approved label are not required to further submit to the label review process.

29.    To make a whole grain claim under the USDA rules a product must contain a minimal quantity of the whole grain component – at least 8 grams of dry whole grain ingredient per labeled serving size of the meat or poultry product as declared in the nutrition facts panel on the label.

30.    However, the Product only contains 5 grams of whole grain, as indicated at the bottom of the side panel – "*THIS PRODUCT PROVIDES 5G OF WHOLE GRAIN IN A 1 SANDWICH SERVING. U.S.D.A. RECOMMENDS 48G OF WHOLE GRAIN EVERY DAY."



31.    Thus, the Product does not contain 8g whole grain per serving, nor is the bread part predominantly whole grain, despite the reasonable expectations that the "made with whole grain" claim denotes a product with at least a minimum amount of whole grains.

32.    The marketing of the Product is misleading because the bread portion contains mostly non-whole grains and contains only a small amount of whole grains.

33.     Other than the small print at the bottom of the side of the box indicating the product has 5 grams of whole grain per serving, no other context is provided for how much 5 grams of whole grain is, in relationship to the much larger amount of refined grain.

34.     The Dietary Guidelines recommends that someone consuming 2,000 calories per day consume 3 ounce-equivalents—or, about 50 grams—of whole grains per day.

35.     Absent context, as both the FDA and the FTC have warned, consumers can be – and are –  misled by statements about whole grain foods.[10]

36.     Defendant is familiar with marketing research and knows that many of its customers purchase foods with whole grain claims because they believe such products are predominantly whole grain or contain a non-*de minimis* amount of whole grain.

37.     Defendant knows this quality is material to a consumer's decision to purchase the Product.

38.     Defendant deliberately capitalizes on foreseeable consumer misconceptions about the Product in its marketing and sales schemes.

39.     Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

40.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

41.     The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

42.     Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

---

[10] Comments, *supra* note 11, at 3–4; Experimental Study on Consumer Responses to Whole Grain Labeling Statements on Food Packages, 77 Fed. Reg. 11,547, 11,547 (Feb. 27, 2012), *available at* https://goo.gl/aW0Nm8.

43.     As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $5.98 per box of four, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

44.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

45.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

46.     Plaintiff Christopher Wargo is a citizen of New York.

47.     Defendant The Hillshire Brands Company, is a Maryland corporation with a principal place of business in Springdale, Washington County, Arkansas and is a citizen of Arkansas and Maryland.

48.     "Minimal diversity" exists because plaintiff Christopher Wargo and defendant are citizens of different states.

49.     Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

50.     Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

51.     This court has personal jurisdiction over defendant because it conducts and transacts

business, contracts to supply and supplies goods within New York.

Parties

52.    Plaintiff Christopher Wargo is a citizen of New York, Patterson, Putnam County.

53.    Defendant The Hillshire Brands Company is a Maryland corporation with a principal place of business in Springdale, Arkansas, Washington County and is a citizen of Arkansas.

54.    Defendant is one of the largest consumer packaged foods companies in the country.

55.    During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within his district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

56.    Plaintiff Christopher Wargo purchased the Product on one or more occasions during 2020, at one or more stores, including Hannaford Supermarket, 162 Route 22 Pawling NY 12564-3211.

57.    Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon the front label claims to expect it contained more whole grain than it did and a non-de minimis amount of whole grain.

58.    Plaintiff was deceived by and relied upon the Product's deceptive labeling.

59.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

60.    The Product was worth less than what Plaintiff paid for it and he would not have paid as much absent Defendant's false and misleading statements and omissions.

61.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components.

Class Allegations

62.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

63.    Plaintiff seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

64.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

65.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

66.    Plaintiff is an adequate representatives because his interests do not conflict with other members.

67.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

68.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

69.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

70.    Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statute)

71.    Plaintiff incorporates by reference all preceding paragraphs.

72.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

73.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

74.   Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

75.   The amount and proportion of the characterizing component, whole grain, has a material bearing on price and consumer acceptance of the Product and consumers do not expect such a small amount of whole grain in the Product.

76.   The front label gives the impression the Product has more real whole grain than it does.

77.   Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

78.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

79.   Plaintiff incorporates by reference all preceding paragraphs.

80.   Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

81.   The amount and proportion of the characterizing component, whole grain, has a material bearing on price and consumer acceptance of the Product.

82.   The front label gives the impression the Product has more real whole grain than it does.

83.   Defendant had a duty to refrain from misleading whole grain claims and knew or should have known same were false or misleading.

84.     This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

85.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

86.     Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

87.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

88.     Plaintiff incorporates by reference all preceding paragraphs.

89.     The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

90.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

91.     The amount and proportion of the characterizing component, whole grain, has a material bearing on price and consumer acceptance of the Product

92.     This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

93.     Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

94.     Defendant received notice and should have been aware of these misrepresentations

12

due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

95. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

96. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

97. Plaintiff incorporates by reference all preceding paragraphs.

98. Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

99. The amount and proportion of the characterizing component, whole grain, has a material bearing on price and consumer acceptance of the Product.

100. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

101. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

102. Plaintiff incorporates by reference all preceding paragraphs.

103. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   October 17, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
_____
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

14

7:20-cv-08470
United States District Court
Southern District of New York

Christopher Wargo, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

The Hillshire Brands Company,

Defendant

## Class Action Complaint

```
        Sheehan & Associates, P.C.
         60 Cuttermill Rd Ste 409
         Great Neck NY 11021-3104
            Tel: (516) 268-7080
            Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 17, 2020

/s/ Spencer Sheehan
Spencer Sheehan