UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER WARGO, *individually and on behalf of all others similarly situated*,

                                        Plaintiff,

        -against-

THE HILLSHIRE BRANDS COMPANY,

                                        Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/22/2022__

No. 20 CV 8672 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

This putative class action alleges that Defendant The Hillshire Brands Company ("Defendant") misrepresented to consumers that its product "Delights English Muffin" by Defendant's Jimmy Dean brand ("the Product") is made only or predominantly with whole grain. (Compl. at 1–8, ECF No. 1.)  Plaintiff Christopher Wargo, individually and on behalf of others similarly situated, brings this action against Defendant asserting claims for violations of New York's General Business Law §§ 349 and 350, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, fraud, and unjust enrichment. (*Id.* at 8-14.)  Presently pending before the Court is Defendant's motion to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15.)  For the following reasons, the Court GRANTS in part, DENIES in part Defendant's motion to dismiss.

## BACKGROUND

### I.  Factual Background

The following facts are derived from the Complaint and are taken as true and construed in the light most favorable to Plaintiff for the purposes of this motion.

Defendant manufactures, distributes, markets, labels, and sells turkey sausage, egg white and cheese breakfast sandwiches purporting to be "English muffin made with whole grain", as depicted in the image below:



(Compl. ¶¶ 1-3.)  The label also states that the Product's ingredients include:

**INGREDIENTS: MUFFIN:** ENRICHED WHEAT FLOUR (WHEAT FLOUR, MALTED BARLEY FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), WATER, WHOLE GRAIN WHEAT FLOUR, YEAST, WHEAT GLUTEN, CONTAINS LESS THAN 2% OF: DEGERMED YELLOW CORN FLOUR, DEGERMED YELLOW CORNMEAL, SODIUM BICARBONATE, FUMARIC ACID, CORN STARCH, SODIUM ACID PYROPHOSPHATE, MONOCALCIUM PHOSPHATE, CALCIUM SULFATE,

SALT, AMMONIUM CHLORIDE, HONEY, CALCIUM PROPIONATE AND POTASSIUM SORBATE (PRESERVATIVES), SOYBEAN OIL, HIGH FRUCTOSE CORN SYRUP, VINEGAR.

(*Id.* ¶ 24.)

Plaintiff alleges the Product's label is misleading because, while the Product's front label prominently states "MADE WITH WHOLE GRAIN," the primary ingredient in the sandwich portion of the Product is enriched wheat flour. (*Id.* ¶ 24.)  Enriched wheat flour is "refined grains that have been processed to remove their bran and germ", thereby "removing the dietary fiber and most other nutrients. . ." before going through another process that "adds back some of the previously removed iron and B vitamins." (*Id.* ¶¶ 6-12.)  Enriched wheat flour thus "only contains the endosperm", "mainly consists of starch", and does not contain fiber or other nutrients that are present in whole grains. (*Id.* ¶¶ 10-12.)  Plaintiff maintains that consumers "increasingly prefer whole grain foods because they are aware of the healthfulness of whole grains relative to non-whole grains."[1] (*Id.* ¶ 4.)

Plaintiff avers that, due to the increased consumer demand for whole grain products,[2] "there are more labels which misrepresent the amount of whole grain they contain," among which is that of the Product in the instant case. (*Id.* ¶¶ 19-24.)  Plaintiff claims that Defendant "is familiar with marketing research and knows that many of its customers purchase foods with whole grain claims[,]" because the consumers "believe such products are predominantly whole grain or contain a non-de minimis amount of whole grain." (*Id.* ¶ 36.)  Plaintiff claims that under federal

[1] Plaintiff alleges that "[w]hole grains are nutritionally superior to non-whole grains because they include the entire grain seed – its endosperm, bran, and germ", which contains the nutrients, most importantly fiber, that have been removed from enriched wheat flour. (*Id.* ¶¶ 5-7.)
[2] Plaintiff notes that "[t]he 2015 Dietary Guidelines for Americans recommends that at least half of the grains in a healthy diet should be whole grains"; "[t]he Scientific Report of the 2015 Dietary Guidelines Advisory Committee found 'strong and consistent evidence' demonstrating that higher consumption of whole grains and lower intakes of refined grains is associated with decreased risk of cardiovascular disease"; "[t]he Dietary Guidelines recommend that Americans dramatically increase their intake of whole grains, and that at least 50% of grains consumed be whole grains," and that "Americans have been heeding this advice." (*Id.* ¶¶ 13-16.)

regulations, Defendant's Product is misleading because it does not contain 8 grams of whole grain per serving as required by USDA to make a whole grain claim. (*Id.* ¶¶ 27–31.)

Plaintiff claims that Defendant's omission and failure to disclose these facts is deceptive and misleading to consumers who want products predominantly made with whole grain or contain a non-*de minimis* amount of whole grain. (*Id.* ¶ 36.)  Plaintiff avers that Defendant deliberately "capitalizes on foreseeable consumer misconceptions about the Product in its marketing and sales schemes." (*Id.* ¶ 38.) As such, Plaintiff claims that Defendant's branding and packaging of the Product is designed to, and does, deceive, mislead, and defraud plaintiffs and consumers. (*Id.* ¶ 39.)  He also claims that Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers. (*Id.* ¶ 40.)  Particularly, Plaintiff claims that as a result of the false and misleading representations, Defendant sold the Product at a premium price, approximately no less than $5.98 per box of four, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold absent the misleading representations and omissions. (*Id.* ¶ 43.)

Plaintiff alleges that he purchased the Product on at least one occasion, including in 2020 at the Hannaford Supermarket in Pawling, New York. (*Id.* ¶ 54.)  He claims to be among a class of consumers who bought the Product for its intended use, and that he relied upon the front label's representations to expect the Product would contain more whole grain than it did and a non-*de minimis* amount of whole grain. (*Id.* ¶ 55.)  Plaintiff further claims that he would not have purchased the product absent Defendant's false and misleading statements and omissions. (*Id.* ¶¶ 57–59.)

## II.  Procedural Background

On October 17, 2020, Plaintiff filed the operative class action complaint, asserting claims for (1) violation of New York General Business Law §§ 349 and 350; (2) breach of express

warranty; (3) breach of implied warranty of merchantability; (4) violation of the Magnuson Moss Warranty Act; (5) negligent misrepresentation; (6) fraud; and (7) unjust enrichment. (ECF No. 1.) As relief, Plaintiff seeks both monetary damages and injunctive relief that would require Defendant to correct the Product's allegedly misleading label. (*Id.*)

On March 15, 2021, Defendant filed a letter seeking a pre-motion conference and leave to file a motion to dismiss, which also stated the grounds on which Defendant would move for dismissal. (ECF No. 9.)  The Court issued a same-day endorsement directing Plaintiff to respond to Defendant's letter motion. (ECF No. 10.)  Plaintiff responded on March 17, 2021. (ECF No. 11.)  By Memorandum Endorsement dated May 10, 2021, the Court waived pre-motion conference and granted Defendant leave to file its motion to dismiss. (ECF No. 12.)

On July 26, 2021, the parties filed their respective briefings on the instant motion: Defendant its notice of motion (ECF No. 13), memorandum in support ("Motion," ECF No. 15), and reply ("Reply," ECF No. 17); and Plaintiff his memorandum in opposition ("Opposition," ECF No. 14).

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  In

applying these principles, the court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff asserts claims against Defendant for (1) violations of §§ 349 and 350 of the New York General Business Law ("GBL"), (2) negligent misrepresentation, (3) breach of express warranty, (4) breach of implied warranty of merchantability, (5) violation of the Magnuson Moss Warranty Act, (6) fraud, and (7) unjust enrichment. (Compl. ¶¶ 71–103.)  Defendant seeks to dismiss all claims based on several grounds, including: (1) failure to plausibly allege consumer deception; (2) failure to adequately plead injury under GBL; and (3) lack of standing to seek injunctive relief. (Mot. at 11–24.)  The Court analyzes each claim below.

### I.  New York General Business Law Sections 349 and 350

Defendant first argues that Plaintiff fails to plausibly state a claim because reasonable consumers are not misled, or deceived, when whole grain is indeed among the ingredients in a product labeled "Made with Whole Grain." (Mot. at 6.)  After due consideration, the Court concludes that Plaintiff has sufficiently alleged that a reasonable consumer could find the Product's packaging misleading.

*A.    Plaintiff sufficiently alleges that the Product's packaging is misleading*

GBL § 349 involves unlawful deceptive acts and practices, while § 350 involves unlawful false advertising. "The standard for recovery under [§] 350, while specific to false advertising, is otherwise identical to [§] 349." *Denenberg v. Rosen*, 71 A.D.3d 187 (2010) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)).  The elements of a cause of action under both sections 349 and 350 are that: "(1) the challenged transaction was 'consumer-oriented';

(2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Id.* (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)). The parties' main dispute in the instant motion involves the second element: whether Defendant engaged in deceptive or materially misleading acts or practices.

To be actionable, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26; *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). In determining whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Pichardo v. Only What You Need, Inc.*, 20-cv-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (citing *Wurtzburger v. Kentucky Fried Chicken*, 16-cv-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017)); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Oswego*, 85 N.Y.2d at 26).

Here, the core issue behind the plausibility of Plaintiff's allegations is whether a reasonable consumer would be misled by Defendant's statement in the Product's packaging to believe that the grain in the Product was predominantly whole grain. In determining this issue, the Court finds the Second Circuit's ruling in *Mantikas v. Kellog Co.*, 910 F.3d 633 (2d Cir. 2018), directly on point.

*Mantikas* concerned the packaging of Cheez-Its crackers, the boxes of which were, in striking parallel with the case at bar, conspicuously labeled "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN."   In *Mantikas*, the grain content was indisputably comprised of predominantly enriched white flour and a smaller amount of whole grain flour.  The product's packaging in that case disclosed the number of grams of whole grain per serving (5 or 8 grams per serving size) and the "Nutrition Facts" panel accurately listed the crackers' actual composition: a serving size was 29 total grams and the first ingredient listed was "enriched white flour."  Despite these disclosures, the Second Circuit held that the plaintiffs had stated a plausible claim because the crackers' labeling "falsely impl[ied] that the grain content is entirely or at least predominantly whole grain, whereas in fact, the grain component consisting of enriched white flour substantially exceeds the whole grain portion." *Id.* at 637.  Therefore, even the technically accurate Nutrition Facts panel did not "render [p]laintiffs' allegations of deception implausible." *Id.*  Rather, the Second Circuit concluded that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Id.*

This Court is of the view that the same principle applies here.  First, the Product's packaging expressly represents that the Product is "MADE WITH WHOLE GRAIN," just like that of the Cheez-Its crackers in *Mantikas*.  Considering it in the light most favorable to Plaintiff, this statement suggests to a reasonable consumer that the Product was either predominantly made with whole grain, or at least contains a non-*de minis* amount of whole grain.  Yet as the Product's packaging admits in fine print at the bottom of the side panel, the Product contains only 5 grams of whole grain per sandwich, whereas enriched wheat flour predominates the ingredient list. "[This] representation is adequately pleaded to have been misleading [to a reasonable consumer]

because it falsely implies that [whole grain flour] is the primary [ingredient of the muffin] in the [P]roduct, when it is not." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 386 (S.D.N.Y. 2021).[3]

The Court is not persuaded by Defendant's argument that, because the Product was in fact made with some quantity of whole grains, or that the "WHOLE GRAIN" statement was accompanied by an asterisk which signals additional explanatory information, the packaging is therefore not false or deceptive. Plaintiff does not argue that whole grain wheat flour is entirely absent as an ingredient in the Product, only that it presents in a *de minimis* amount. As the Second Circuit concluded in *Mantikas* in review of nearly identical facts:

> [T]he conspicuous "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" claims on the front and center of the Defendant's packaging communicates to the reasonable consumer the false message that the grain content of the [Product] is exclusively, or at least predominately whole grain. [T]his false message is not dispelled by the information that each cracker is "MADE WITH 8G [OR 5G] G OF WHOLE GRAIN PER SERVING," which fails to communicate that the quantity of enriched white flour exceeds the quantity of whole grain. . . [T]he misleading quality of the message is not effectively cured by implicitly disclosing the predominance of enriched white flour in small print on an ingredients list on the side of the package.

*Mantikas*, 910 F.3d at 638-639. Other courts in this Circuit have similarly ruled in analogous cases. *See, e.g.*, *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 104 (E.D.N.Y. 2020) ("A chocolate chip cookie may not necessarily be comprised predominantly of chocolate (one can only dream), but it would still likely be misleading to label it as 'Made With Natural

---

[3] In *Campbell*, as here, a customer brought a putative class action complaint asserting violations of GBL §§ 349 and 350 after purchasing Whole Foods brand "Honey Graham Crackers." There, the packaging on the box of crackers featured the words "Honey Graham" in large letters with "Crackers" written in a smaller font below. Similarly, as in the instant case, the plaintiff in *Campbell* alleged that this packaging would lead a reasonable consumer to "think that the product contains more whole grain – or graham – flour than refined flour." *Campbell*, 516 F. Supp. 3d at 382. The district court agreed, holding that a reasonable customer "would read the reference on the packaging to Graham to be a reference to 'whole wheat'" and conclude "that the grain in the product is predominantly, if not entirely, whole grain," even though a "customer could determine from the ingredient label that refined flour was the principal ingredient." *Id.* at 383.

Chocolate' if the cookie's chocolate's content is 99.999% artificial and synthetic. Likewise, a frozen pizza manufacturer that labels its products as 'Made with Real Pepperon' likely cannot prevail at the motion to dismiss stage under *Mantikas* by unabashedly using 99.999% artificial or synthetic meat fillers and simply arguing a pizza's main ingredient is dough. The list goes on."); *Campbell*, 516 F. Supp. 3d at 387 (rejecting defendant's argument that "so long as there is any honey in the product, the references in the packaging cannot be deceptive" under *Mantikas*). A conclusion to the contrary of these precedents would permit Defendant to mislead consumers to believe their Product were predominately made of whole grain so long as the "[the Product] contained an iota of whole grain, along with 99.999% white flour." *Mantikas*, 910 F.3d at 638-639. As the Second Circuit held in *Mantikas*, "such a rule would validate highly deceptive marketing." *Id*. at 639.

Accordingly, the Court concludes that Plaintiff has sufficiently alleged that the Product's packaging is misleading for purposes of his claims under GBL §§ 349 and 350.

B.    *Plaintiff sufficiently pleads injury under GBL*

Defendant next argues that Plaintiff fails to plausibly allege that he suffered injury and damage, and/or that Defendant set the price at which he purchased the Product. Defendant asserts that such failures provide independents ground for dismissal. The Court disagrees.

To satisfy the injury element of a claim under GBL §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). "One way to do so is to allege that the plaintiff would not have purchased the product or been willing to pay as much had they known the true facts." *Campbell*, 516 F. Supp. 3d at 388. The Second Circuit has further explained that it is sufficient to allege "that the price of the product was inflated

as a result of defendants deceptions [to] meet[ ] the injury requirement." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020); *see also Valcarcel v. Ahold U.S.A., Inc.*, No. 21-CV-07821 (JSR), 2021 WL 6106209, at *7 (S.D.N.Y. Dec. 22, 2021).

As such, Defendant's argument that Plaintiff's allegations were "conclusory" with respect to the Product's "price premium" has been explicitly rejected by both the Second Circuit in *Axon*, 813 F. App'x at 704, and the courts applying *Axon* to claims brought in light of analogous factual allegations, more recently in in *Valcarcel*, 2021 WL 6106209, at *7.   This Court similarly concludes that neither plaintiff's failure to identify the prices of competing products to establish the premium he paid, nor his failure to identify which of the manufacturer or retailer set the price of the Product, is fatal to Plaintiff's claim at the motion to dismiss stage. *See Valcarcel, Inc.*, 2021 WL 6106209, at *7 (S.D.N.Y. Dec. 22, 2021) (citing *Axon*, 813 F. App'x at 704 (2d Cir. 2020)).

Accordingly, the Court concludes that Plaintiff has adequately pled the element of injury resulting from the alleged GBL violations.  As the Court has already concluded that Plaintiff has sufficiently alleged that the Product's packaging is misleading, Defendant's motion to dismiss Plaintiff's claims under GBL §§ 349 and 350 is denied.

## II.  Negligent Misrepresentation

 "To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.' " *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (quoting *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). After due consideration, the Court concludes that Plaintiff's negligent

misrepresentation fails because he has failed to allege the existence of a special relationship giving rise to a duty to speak on the part of Defendant.

"Under the 'duty' element, New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity." *Id.* (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993) (internal quotation marks omitted)). "In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'" *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)) (alterations in original). *Kimmell* directs courts to examine the following factors to determine whether a special relationship, and a duty to provide correct information, exists: (1) whether the person making the representation held or appeared to hold unique or special expertise; (2) whether a special relationship of trust or confidence existed between the parties; and (3) whether the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Id.* (quoting *Kimmell*, 89 N.Y.2d at 264) (internal quotation marks omitted).

Applying the *Kimmell* factors, the relationship between Defendant, as the manufacturer and seller, and Plaintiff as the buyer, does not rise to the level of the kind of special relationship—approaching that of privity—that would impose a duty to speak on Defendant. "[N]ot all representations made by a seller of goods . . . will give rise to a duty to speak with care." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) (quoting *Kimmell*, 89 N.Y.2d at 263). "Instead, the law of negligent misrepresentation requires a closer degree of trust between

the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Id.* (citing *Kimmell*, 89 N.Y.2d at 263).

Plaintiff's allegations here only describe a relationship between Plaintiff and Defendant which is that of an ordinary buyer and seller—which does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation. *See, e.g.*, *Izquierdo*, 2016 WL 6459832, at *8 (dismissing negligent misrepresentation claim based on allegedly misleading candy packaging because "[n]othing in the complaint suggests that the transaction differs in any way from the numerous cases in this District and Circuit in which courts have held that a basic commercial transaction does not give rise to a special relationship."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) (dismissing New York law negligent misrepresentation claim alleging defendant's products were misleadingly labeled as organic, natural, or all natural for "failure to plead any cognizable special relationship" with the defendant, reasoning that "[d]efendant's obligation to label products truthfully does not arise from any special relationship. There is nothing approximating privity between the parties."). Because the relationship between Plaintiff and Defendant was not so close as to approach that of privity, Plaintiff has not adequately pleaded that Defendant had a duty to provide information to Plaintiff.

Accordingly, the Court dismisses Plaintiff's negligent misrepresentation claim.

### III.  Breach of Express Warranty

To state a claim for an express breach of warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). However, "[i]n order to assert a breach

of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'"[4] *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244–45 (S.D.N.Y. 2020) (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); *see also* N.Y. U.C.C. § 2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy").

Here, the Court concludes that Plaintiff's express warranty claim fails for lack of timely notice. Plaintiff alleges only that "[he] provided or will provide notice to defendant, its agents, representatives, retailers and their employees." (Comp. ¶ 93.)  "That allegation is insufficient to show that the buyer provided timely notice of the alleged breach—the statement is wholly equivocal." *Campbell*, 516 F. Supp. 3d at 391. It does not allege that notice has been provided, only that Plaintiff "provided or will provide" notice.[5]  "If Plaintiff had provided notice, [he] could have written that, rather than pleading, in essence, both that [he] did provide notice, and that [he] did not do so but will do so in the future. Plaintiff has not adequately pleaded that [he] in fact provided notice." *Id.*

Accordingly, the Court dismisses Plaintiff's claim for breach of express warranty. *See Lugones*, 440 F. Supp. 3d at 245 (finding that "Plaintiffs must allege some form of timely, pre-litigation notice" and dismissing breach of express warranty claim for failure to provide timely

---

[4] "Although a minority of New York State cases suggest an exception to the notice requirement in retail sales, the court declines to impose this exception in the instant action, particularly given that the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018); *see also Lugones*, 440 F. Supp. 3d at 245 (following *Colella* and finding the exception "inapplicable where, as here, Plaintiffs have not alleged any physical or personal injury as a result of Defendant's alleged breach"). Here, too, Plaintiff has not alleged any physical or personal injury, so the exception is inapplicable.

[5] Plaintiff also alleges that "Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years." (Compl. ¶ 94.) This allegation does not suggest that the buyer provided timely notice, as required.

14

notice); *Colella*, 348 F. Supp. 3d at 143–44 (dismissing express warranty claim where the complaining "ma[de] no allegations and state[d] no facts showing that notice was provided to defendant"); *Quinn*, 958 F. Supp. 2d at 544 (dismissing breach of warranty claim for failure to allege timely notice).

## IV.  Breach of Implied Warranty of Merchantability

On the same basis on which the Court dismissed Plaintiff's claim for breach of express warranty, the Court similarly dismisses his claim for breach of the implied warranty of merchantability. "The U.C.C.'s notice requirement for express warranty claims also applies to claims for breach of implied warranty." *Campbell*, 516 F. Supp. 3d at 392; *see also Int'l Bhd. of Teamsters Local 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-cv-1692 (RJD), 2012 WL 13202126, at *23 (E.D.N.Y. Apr. 19, 2012) (dismissing express and implied warranty claims for failure to plead that defendants were given timely notification of breach); *Hubbard v. Gen. Motors Corp.*, No. 95-cv-4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (dismissing express and implied warranty claims under Section 2-607(3) of the New York Uniform Commercial Code because the complaint "lacks any allegation that plaintiff notified [the defendant]").

## V.  Magnuson Moss Warranty Act

Plaintiff also brings a claim under the MMWA, 15 U.S.C. §§ 2301, *et seq.* (Compl. at 12–13.)  "To state a claim under MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Gr. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015). Hence, as his state law claims for express and implied warranty fail, Plaintiff's MMWA claim similarly fails for the same reasons.

## VI. Fraud

To state a claim of fraud under New York law, Plaintiff must allege (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. *Schlaifer Nance & Co. v. Estate of* Warhol, 119 F.3d 91, 98 (2d Cir. 1997). A claim of fraud must be alleged with the particularity required by Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted). Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

Here, the Court concludes that Plaintiff's fraud claim fails because he has failed to plead fraudulent intent. Plaintiff's only allegation about Defendant's intent is that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers." (Compl. ¶ 100.)  That allegation on its own is insufficient because "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp.*, 297 F. Supp.3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)).  "Moreover, while the existence of accurate information regarding the product's ingredients on the package does not

stymie a deceptive labeling claim as a matter of law, it is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud." *Campbell*, 516 F. Supp. 3d at 391.

Accordingly, the Court dismisses Plaintiff's claim for fraud.

**VII.    Unjust Enrichment**

Under New York law, an unjust enrichment claim requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d. Cir. 2000) (internal quotation marks omitted). However, "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Izquierdo*, 2016 WL 6459832, at *10 (quoting *Corsello*, 18 N.Y.3d 777 at 790–91) (internal quotation marks omitted). "And an unjust enrichment claim 'will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'" *Hesse v. Godiva Chocolatier, Inc*., 463 F. Supp. 3d 453, 473–74 (S.D.N.Y. 2020) (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)).

Here, the Court concludes that Plaintiff's unjust enrichment claim is duplicative of his other claims. The entirety of Plaintiff's unjust enrichment count reads: "Plaintiff incorporates by reference all preceding paragraphs. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." (Compl. ¶¶ 102–103.)  "Thus, the unjust enrichment claim is a mere repackaging of her other claims based on the alleged misrepresentations on the Product's packaging." *Campbell*, 516 F. Supp. 3d at 394.  It "relies on the same factual allegations and the same theory of liability" as Plaintiff's other theories

of recovery. *Hesse*, 463 F. Supp. 3d at 474 (dismissing unjust enrichment claim as duplicative of other claims alleging defendant's chocolate label was misleading); *see also Alce v. Wise Foods, Inc.*, No. 17-cv-2402 (NRB), 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative because the unjust enrichment allegations were "a mere regurgitation of those made with respect to plaintiffs' slack-fill claims under the GBL . . . .").

Accordingly, the Court dismisses Plaintiff's unjust enrichment claim as duplicative.

**VIII.    Injunctive Relief**

Finally, Plaintiff seeks injunctive relief for Defendant "to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws." (Compl. at 14.)  Defendant argues that Plaintiff lacks standing to seek injunctive relief because he knows "where to look on the ingredient list to identify the flour ingredients," and therefore cannot show an imminent risk of future injury.  The Court agrees.  Plaintiff does not have Article III standing to pursue injunctive relief because he is aware of the allegedly deceptive packaging, and therefore cannot demonstrate that he will be harmed in a similar way in the future. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*.") (citations omitted).

"A plaintiff seeking to represent a class must personally have standing." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [he] is likely to be harmed again in the future in a similar way." *Id.*  "In a deceptive business practices action under GBL §§ 349 and 350, the Second Circuit

has determined that absent an intent to 'purchase the offending product in the future,' a plaintiff lacks standing to seek injunctive relief." *Yee Ting Lau v. Pret A Manger (USA) Ltd.*, No. 17-cv-5775 (LAK), 2018 WL 4682014, at \*2 (S.D.N.Y. Sept. 28, 2018) (quoting *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018)).

The Second Circuit recently reaffirmed this conclusion in the context of a consumer confronted by allegedly deceptive packaging in *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146–49 (2d Cir. 2020).  The Second Circuit reasoned the following in relevant part:

> In the first place, past purchasers are not bound to purchase a product again— meaning that once they become aware they have been deceived, that will often be the last time they will buy that item . . . . But even if they do purchase it again, there is no reason to believe that all, or even most, of the class members will incur a harm anew. Supposing that they have been deceived by the product's packaging once, they will not again be under the illusion that the boxes of the newer pastas are filled in the same way as the boxes of the older pastas. Instead, next time they buy one of the newer pastas, they will be doing so with exactly the level of information that they claim they were owed from the beginning.

*Id.* at 147–48.

As in *Berni*, Plaintiff fails to show how he is likely to be harmed again in the future in a similar way.  Indeed, Plaintiff alleges that had he known the truth about the Product, he would not have purchased it or he would have paid less. (Compl. ¶¶ 59-60.)  Yet, at the same time, he asserts that he "intends to, seeks to, and will purchase the Product again when he can do so with the assurance that [the] Product's labels are consistent with the Product's components." (*Id.* ¶ 61.)  Thus, Plaintiff appears to say that he will not buy the product so long as the label remains misleading.  Therefore, "[b]ecause [Plaintiff] admit[s] that [he] [is] unlikely to purchase the [Product] at issue, unless the [Product] [is] changed, [he] lack[s] standing to seek injunctive relief." *Sharpe*, 481 F. Supp. 3d at 101 (citing *In re Amla Litig.*, 320 F. Supp. 3d 578, 593 (S.D.N.Y. 2018) (holding that plaintiffs lacked standing to seek injunctive relief under GBL § 349 where they

"adduce[d] no evidence that they are likely to repurchase the product, and indeed allege[d] that they would not have purchased the product in the first place had they known of its alleged defects").  Accordingly, the Court denies Plaintiff's request for injunctive relief.

### IX.  Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted).  "Leave to amend, though liberally granted, may properly be denied" for "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

While Plaintiff requests leave to file an Amended Complaint within the last sentence of his response in opposition, he has not otherwise suggested that he is in possession of facts that would cure the deficiencies that Defendants highlighted in the instant motion and that the Court highlighted in this opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249–50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

Plaintiff has had the benefit of a pre-motion letter from Defendant stating the grounds on which it would move to dismiss.  Nevertheless, Plaintiff failed to plead facts that would allow the Court to draw reasonable inference in support of his allegations.  Without such facts, attempts to

amend is futile.  Accordingly, with respect to all those claims that the Court has dismissed from the Complaint, the Court will dismiss them with prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part, DENIES in part Defendant's motion to dismiss (ECF No. 13.)  The Court GRANTS the motion with respect to Plaintiff's (1) individual claims not asserted under the Class Action Fairness Act; (2) claim for negligent misrepresentation; (3) claim for breach of express warranty; (4) claim for breach of implied warranty of merchantability; (5) claim under the Magnuson Moss Warranty Act; (6) claim for fraud; (7) claim for unjust enrichment; and (8) request for injunctive relief.  The Court DISMISSES all these claims with prejudice.  The Court DENIES the motion with respect to Plaintiff's consumer protection claims under GBL §§ 349 and 350.

The Court DIRECTS Defendant to file an answer to the Complaint with respect to Plaintiff's claims under GBL §§ 349 and 350 on or before May 23, 2022. The Court further DIRECTS the parties to confer and jointly complete and file a Case Management Plan and Scheduling Order by June 13, 2022.  After review and approval of the Scheduling Order, the Court will issue an Order of Reference to Magistrate Judge Judith C. McCarthy for general pretrial purposes.  The parties shall contact Judge McCarthy within seven (7) business days of the date of the Order of Reference to schedule a conference.

The Clerk of Court is finally directed to terminate the motion at ECF No. 13.

Dated:    April 22, 2022                                  SO ORDERED:
          White Plains, New York

                                                    _____
                                                         NELSON S. ROMÁN
                                                       United States District Judge